# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

RITA E. CAIN,                        )
                                     )
    Plaintiff,   )                      No. 3:11-cv-0666
                                     )                      Chief Judge Haynes
v.                                   )
                                     )
MONTGOMERY COUNTY                    )
TENNESSEE,                           )
                                     )
    Defendant.   )

## M E M O R A N D U M

Plaintiff, Rita Cain, filed this action under Title VII of the Civil Rights Act of 1964, amended 42 U.S.C. § 2000(e); 42 U.S.C. §1981 and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 et seq., against the Defendant, Montgomery County, Tennessee, her current employer. Plaintiff's claims are that Defendant demoted Plaintiff and thereafter failed to consider her for her prior position based upon her sex. Plaintiff also asserts that the Defendant retaliated against her after she complained of sex discrimination. Plaintiff also asserts a state common law retaliation claim.

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 27), contending, in sum, that Defendant demoted Plaintiff for a legitimate, non-discriminatory and non-retaliatory reason, namely her "immoral, indecent, or notoriously disgraceful conduct or conduct unbecoming of a county employee; use of disrespectful or offensive conduct or language in public, or towards the public, county officials, or fellow employees, either on duty or off-duty, or use of insulting, abusive, or obscene language." (Docket Entry No. 28, p. 3-4). Plaintiff responds that the

1

Defendant's stated reasons for her demotion are mere pretext for sex discrimination, and that Defendant demoted Plaintiff in retaliation for Plaintiff's prior complaints of gender discrimination. (Docket Entry No. 37, p. 25-27).

For the reasons set forth below, the Court concludes that Plaintiff lacks proof that the Defendant's stated reason was a pretext for sex discrimination or retaliation. Thus, the Court concludes that the Defendant's motion for summary judgment should be granted.

## A. FINDINGS OF FACT[1]

Montgomery County Emergency Medical Services ("EMS") is a department of Montgomery County government, and is the sole 911 provider for the Clarksville-Montgomery county area. (Docket Entry No. 30-4, Allbert Affidavit, ¶ 2). EMS provides emergency and non-emergency medical transport, as well as other specialized rescue operations. Id. Montgomery County Emergency Medical Services hired Plaintiff as an emergency medical technician ("EMT") in 1992 and in 1996 promoted Plaintiff to the position of lieutenant. (Docket Entry No. 30-1, Cain Deposition, p. 2). As a lieutenant, Plaintiff's responsibilities included setting the schedule and supervising the paramedics and other EMTs on her shift. Id.

On March 29, 2010, in Plaintiff's presence, an EMS employee called the Montgomery County E-911 to ascertain the status of a transport. Jonathan Witten, an E-911 dispatcher, received

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 f.2d 43, 46 (6th Cir. 1986) app. 840 f.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). The Court concludes that some factual disputes exist, but the Court concludes that those disputes are not material given the material facts conceded by the Plaintiff. Thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

2

the call (Docket Entry No. 30-1, Cain Deposition, p. 5). Plaintiff was upset that the E-911 dispatch had not notified EMS of the transport and stated: "You all don't tell me shit." Id. at 7. Jonathan Witten heard Plaintiff's statement over the telephone. Id. Plaintiff then walked across the room, and passed gas loudly enough for the dispatcher to hear over the telephone. Id. at 9. Michelle Pulley, the E-911 supervisor, called EMS and spoke to Plaintiff, who admitted that she had passed gas and apologized for the incident, stating, "It's joking around." Id. at 10-11. Plaintiff then called Assistant Chief Tony Norfleet to tell him that dispatch had complained about her behavior. Id. at 13.

On March 29, 2010, Betty Miller, EMS's Assistant Director, received an email from Michelle Pulley describing the incident (Docket Entry No. 30-5, Miller Affidavit, p. 4, Exhibit 1 thereto). Pulley wrote, "I am very upset with the lack of professionalism show to one of our employees no matter who did this. Then for it to be taken as a joke was even worse." Id. On March 30, 2010, Betty Miller emailed Keith Allbert, the EMS compliance and education director, to inform him of the incident. Id. at ¶ 3. Allbert, in turn, notified EMS's Chief Wes Klein and Deputy Chief Tony Norfleet of the incident, and requested that E-911 pull the tape of the recorded conversation. (Docket Entry No. 30-4, Allbert Affidavit, ¶ 4). After listening to the tape, Allbert stated that, "I was embarrassed for the department by this unprofessional conduct. All EMS personnel are expected to conduct themselves professionally at all times, especially those in a supervisory or leadership role." Id.

Chief Klein and Deputy Chief Norfleet consulted with Sheryl Gossard, the county's human resources director about an appropriate response to the incident. (Docket Entry No. 30-6, Norfleet Affidavit , ¶ 2). After investigating the incident, Gossard recommended that "[b]ased upon the type of information that I have and the action that Lieutenant Cain had at that time, based on the historical reviews of what we had done in his department since I had been there, that my recommendation was

3

to suspend Lieutenant Cain, as well as a demotion. And that was being consistent with what we had done in two other cases." (Docket Entry No. 30-3, Gossard Deposition, at 4).

On April 2, 2010, Plaintiff was given a "performance correction notice" that required Plaintiff to write a formal apology to Jonathan Witten, the E-911 dispatch operator who received the call on March 29, 2010, and demoted Plaintiff to the rank of paramedic, effective immediately. (Docket Entry No. 30-1, Cain Deposition, Exhibit 1 thereto).

On April 12, 2012, Plaintiff signed and acknowledged this notice. Id. at Exhibit 3 thereto. Plaintiff also submitted a rebuttal to this notice: "I believe if I were a male employee, I would not have been demoted. I am also requesting an appeal of this decision." Id. at Cain Deposition, Exhibit No. 3 thereto. After Plaintiff's demotion, EMS announced the open lieutenant position. (Docket Entry No. 30-4, Allbert Affidavit, ¶ 5). To be considered for the position, the announcement stated that an applicant must not have a disciplinary record within the twelve months prior to applying. Id. Rita Peters, a female applicant, filled the lieutenant's position. Id.

## B. CONCLUSIONS OF LAW

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court

4

explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment `shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

<u>Id.</u> at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no `genuine issue for trial.'" <u>Matsushita Electrical Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989); <u>see also</u> <u>Routman</u>, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the <u>Celotex</u> Court:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied

5

requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

477 U.S. at 323 (emphasis deleted).

As the Sixth Circuit explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex, 477 U.S. at 322 and Rule 56(e)).

Once the moving party meets its initial burden, the Sixth Circuit warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion. . . . [and] must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby, 477 U.S. at 251, 255). Moreover, the Sixth Circuit explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted); see also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790 (6th Cir. 1990) (quoting Liberty Lobby, 477 U.S. at 151-52) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to

6

require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.").

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is `genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.</u>
>
>         * * *
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.</u> If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.</u> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citations omitted and emphasis added).

It is likewise true that

> [I]n ruling on motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: `The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Sixth Circuit stated, "[a]ll facts and inferences to be drawn therefrom must be

read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986) (citation omitted).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of."

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (citation omitted). In this district, the parties must provide specific references to the proof upon which they rely. See Local Rule 56.01(c) (requiring each party to provide a statement of undisputed facts to which the opposing party must respond).

In Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989), the Sixth Circuit discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1.  Complex cases are not necessarily inappropriate for summary judgment.

2.  Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.  The movant must meet the initial burden of showing `the absence of a

8

genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the `scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the `old era' in evaluating the respondent's evidence. The respondent must `do more than simply show that there is some metaphysical doubt as to the material facts.' Further, `[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is `implausible.

Id. at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed

upon a motion for summary judgment: (1) whether the moving party "clearly and convincingly"

established the absence of material facts; (2) if so, whether the plaintiff present sufficient facts to

9

establish all the elements of the asserted claim or defense; (3) if factual support is presented by the nonmoving party, whether those facts are sufficiently plausible to support a jury verdict or judgment under the applicable law; and (4) whether there are any genuine factual issues with respect to those material facts under the governing law? As the moving party in this action, the Defendant bears the burden of "clearly and convincingly" establishing the absence of material facts in Plaintiff's complaint. Sims, 926 F.2d 526 (6th Cir. 1991).

Plaintiff's claim is that the Defendant discriminated against her based upon her gender by disciplining her more harshly than male employees for "the same or worse conduct." (Docket Entry No. 1, ¶ 14). Plaintiff's claims are asserted under 42 U.S.C. § 1981[2], Title VII and the THRA. The THRA "provide[s] for execution within Tennessee of the policies embodied in the federal civil rights statutes," "an analysis of claims under the THRA is the same as under Title VII of the Federal Civil Rights Act." Lynch v. City of Jellico, 205 S.W.3d 384, 399 (Tenn. 2006). Thus, Plaintiff's Title VII, Section 1981 and THRA claims are analyzed under the same legal framework.

For a *prima facie* showing of sex discrimination, the Plaintiff must prove that: "(1) she is a member of a protected class; (2) she was performing her job to her employer's legitimate expectations; (3) that in spite of her meeting the legitimate expectations of her employer, she suffered an adverse employment action; and (4) that she was treated less favorably than similarly situated male employees." Hildebrant v. Illinois Dept. of Natural Res., 347 F.3d 1014, 1030 (7th Cir. 2003); see also Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003).

Plaintiff's proof establishes that she is (1) a member of a protected class due to her gender,

---

[2]The Court has previously dismissed Plaintiff's claims under 42 U.S.C. § 1983 claim pursuant to the statements of Plaintiff's counsel in open court.(Docket Entry No. 16).

10

and (2) that she was performing her job to her employer's legitimate expectations until the March 29, 2010 incident. Plaintiff, however, does not dispute the March 29, 2010 incident that resulted in her demotion. (Docket Entry No. 36, ¶ 14-16). Defendant's Notice stated that Plaintiff did not meet her employer's expectations, and Plaintiff has not presented proof to rebut this evidence that she failed to meet her employer's legitimate expectations. (Docket Entry No. 30-1, Cain Deposition, Exhibit 1 thereto).

As to Plaintiff's proof of her less favorable treatment than similarly situated male employees, Plaintiff describes an incident where a male Montgomery County EMS employee was romantically involved with a female employee, slammed the female employee against a wall, and then pulled her down a hallway by her hair. (Docket Entry No. 30-1, Cain Deposition, p. 20-21). Plaintiff did not witness this event, but asserts that the male employee was not disciplined as a result of the incident. Id. In a second incident, Plaintiff cites a male EMS employee "thumping" a female EMS employee on the breast. Id. at 22. Plaintiff did not witness this incident, but asserts that the male employee was given one day off work without pay and moved to a different shift. Id. In a third incident, Plaintiff cites a male employee who had sex off-duty with a rescue squad member in the boathouse at an EMS station. Id. at 23. This male employee was given three days off without pay, and eventually demoted. Id.

As to the first two incidents, the male employees were not similarly situated to Plaintiff, because neither employee was a supervisor. In the third incident, the male employee was also a lieutenant, but his acts were off duty, and were unrelated to his supervisory role. In this Circuit,

> "In order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that **all of the relevant aspects of his employment situation**

11

**are "nearly identical" to those of the [non-protected] employees who he alleges were treated more favorably.** The similarity between the compared employees must exist in all relevant aspects of their respective employment claims.

Tribble v. Memphis City Schools, 193 Fed. Appx. 401, 405 (6th Cir. 2006) (emphasis added). Thus, the Court concludes that Plaintiff fails to establish a *prima facie* showing of sex discrimination.

Assuming Plaintiff made a *prima facie* showing of sex discrimination, the burden shifts to the Defendant to offer a legitimate, nondiscriminatory reason for its decision to discipline the Plaintiff. Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000). By its performance correction notice and emails, Defendant documented its decision-making process on Plaintiff's discipline. Defendant's proof is that its discipline of Plaintiff was for a legitimate reason, namely, "immoral, indecent, or notoriously disgraceful conduct or conduct unbecoming of a county employee; use of disrespectful or offensive conduct or language in public, or towards the public, county officials, or fellow employees, either on duty or off-duty, or use of insulting, abusive, or obscene language." (Docket Entry No. 30-1, Cain Deposition, Exhibit 1 thereto) and (Docket Entry No. 30-4, Allbert Affidavit at 6-9). Thus, if applicable, the Court would conclude that Defendant carried its burden of proving a legitimate, nondiscriminatory reason for Plaintiff's discipline.

In this setting, the burden would shift back to the Plaintiff to prove that the Defendant's stated reasons for discipline are pretext for sex discrimination. Dews, 231 F.3d at 1020 (6th Cir. 2000). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004) (quoting Texas Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "Proof that the Defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite

persuasive." Reeves v. Sanderson Plumbing Prods., Inc, 530 U.S. 133, 147 (2000).

Defendant's stated reason for Plaintiff's demotion is undisputed. Plaintiff's proof about alleged misconduct of male employees is hearsay and does not involve similarly situated employees. Plaintiff lacks evidence that Plaintiff's discipline was due to sex discrimination or is pretext for sex discrimination. Thus, the Court concludes that Plaintiff's proof cannot support a judgment for a violation of Title VII, Section 1981 or the THRA.

A plaintiff may establish a *prima facie* showing of retaliation by evidence (1) that plaintiff engaged in activity protected by Title VII, (2) that plaintiff's exercise of those rights was known to defendant, (3) that defendant then took adverse employment action against the plaintiff or subjected plaintiff to "severe or pervasive retaliatory harassment by a superior," and (4) a causal connection exists between the activity and the adverse employment action. Morris v. Oldham Cty. Fiscal Ct., 201 F.3d 784, 792 (6th Cir. 2000).

As to Plaintiff's retaliation claim, the Tennessee Supreme Court has stated, "[o]ur legislature intended for the THRA 'to be coextensive with federal law'...Although we are not bound or limited by federal law, '[t]he policy of interpreting the THRA coextensively with Title VII is predicated upon a desire to maintain continuity between state and federal law." Allen v. McPhee et al., 240 S.W.3d 803, 812 (Tenn. 2007) (quotations omitted). Thus, Plaintiff's retaliation claim under both Title VII and THRA are analyzed under the same legal standard.

As to (1) Plaintiff's protected activity, Plaintiff identifies her "filing charges of discrimination" (Docket Entry No. 1, ¶ 34), but specifically her rebuttal that her demotion was based on her sex. Plaintiff stated: "I believe if I were a male employee, I would not have been demoted" (Docket Entry No. 30-1, Cain Deposition, Exhibit No. 3 thereto).

13

As to the Defendant's retaliatory action, Plaintiff cites the Defendant's failure to rehire her for the lieutenant position after her demotion. The Defendant's announcement for the open lieutenant states, "[a]nyone with disciplinary action within the past twelve months shall not be considered." (Docket Entry No. 39-11, Position Announcement, p. 1). As to the third and fourth elements, Plaintiff contends this disciplinary action was to prevent her from applying for the position and for her statement of gender discrimination in her rebuttal. (Docket Entry No. 39-6, Cain Deposition, p. 78-79).

Construing the evidence in the light most favorable to the nonmoving party, the Court concludes that Plaintiff's proof makes a *prima facie* showing of retaliation. Thus, "the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its action." Canitia v. Yellow Freight Sys. Inc., 903 F.2d 1064, 1066 (6th Cir. 1990) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

The Defendant's proof is that the minimum qualification of no record of disciplinary action for the twelve months prior to the application is required by the Montgomery County human resources policy. That policy provides: "[a] final written warning prevents pay increases or promotions for six (6) months from the date of issuance." (Docket Entry No. 30-4, Allbert Affidavit, ¶ 5). Thus, Defendant contends that "[Plaintiff's] application was not considered based upon the minimum qualification requirement that a candidate not have a record of disciplinary action for the previous twelve (12) months." Id. The Court concludes this proof satisfies Defendant's burden of a valid rationale for its decision setting certain conditions on applicants for the open lieutenant position. Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996).

As set forth earlier, the burden returns to Plaintiff to "demonstrate by a preponderance of the

14

evidence that the proffered reason was a mere pretext for discrimination." <u>Abbott v. Crown Motor Co., Inc.</u>, 348 F.3d 537, 542 (6th Cir. 2003). Plaintiff lacks any evidence to challenge Defendant's rationale for stating the qualifications for the open lieutenant position. For the reasons set forth in the discussion of pretext on Plaintiff's sex discrimination claim, the Court concludes that Plaintiff's proof cannot support a judgment on Plaintiff's retaliation claim.

For these reasons, the Court concludes that the Defendant's motion for summary judgment (Docket Entry No. 27) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this _21st_ day of November, 2012.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court

15